1 | Molly E. Thurmond (SB No. 88535) | FEES EXEMPT PURSUANT TO
2 | HALL, HIEATT & CONNELY, LLP | GOVERNEMTN CODE § 6103
  | 1319 Marsh Street, Second Floor
  | San Luis Obispo, CA 93401
3 | Telephone: (805) 544-3830
  | Facsimile: (805) 544-5329
4 | thurmond@hhc-sb.com
5 | Attorney for Defendant
6 | Jan E. Tomsky (SB No. 173131)
  | FAGEN FRIEDMAN & FULFROST, LLP
  | 70 Washington Street, Suite 205
7 | Oakland, CA 94607
  | Telephone: (510) 550-8200
8 | Facsimile: (510) 550-8211
  | jtomsky@f3law.com
9
10 | Attorney for Defendant
11
12 | Daniel R. Shaw (SB No. 281387)
  | SHAW FIRM
  | 3196 S. Higuera St. Suite E
13 | San Luis Obispo, CA 93401
  | Telephone: (805) 439-4646
14 | Facsimile: (805) 301-8030
15 | Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| J.B., a minor; by and through his parents and guardians, JACQUI BANTA and JEFF BANTA, | CASE NO. TBD |
| Plaintiff, | **JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE** |
| v. | |
| LUCIA MAR UNIFIED SCHOOL DISTRICT, | |
| Defendant. | |

-1-
JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE

Plaintiff J.B. by and through his parent and legal guardians Jacqui and Jeff Banta ("Parents") (collectively with J.B. "Plaintiffs") and Defendant Lucia Mar Unified School District ("District"), hereby jointly petition this Court for approval of the parties' proposed settlement of this matter, and of the minor's compromise included herein.

## BACKGROUND

**This Petition is being brought on the following grounds:**

Student J.B. is a minor who resides with Parentsand attended school within the District. Parents alone hold all educational rights for J.B., and no other person may bring any action, claim, or complaint against the District regarding any of the matters settled in the Settlement Agreement and General Release attached to this Petition as Exhibit "A" ("Settlement Agreement").

A current dispute exists between the parties related to the educational services provided to J.B. and allegations that untrained District employees physically restrained him. Furthermore, J.B. alleges that one District employee assaulted him.

On February 15, 2019, Plaintiffs requested a due process hearing with the Office of Administrative Hearings ("OAH") in an effort to exhaust administrative remedies and pursue federal civil rights claim against the District and its employees. The administrative proceeding is ongoing but has been continued pending this Court's approval of the Settlement Agreement. On June 11, 2019, the governing board of the District approved the Settlement Agreement. All that is left now is for this Court to approve the minor's compromise. Legal proceedings have not commenced in this Court. This Court would have jurisdiction to hear and decide any such proceedings pursuant to 28 U.S.C. §§ 1331 because the action would arise under 42 U.S.C. § 1983 and 29 U.S.C. § 794.

**Plaintiff alleges the following:**

J.B. was an eleven-year-old special education student who qualifies under the categories of other health impairment (ADHD and Sensory Processing Disorder) and speech and language. J.B. is also a student with autism. J.B.'s primary disability has always been autism, yet the District has refused to identify him as a student who qualified for special education under the category of

autism.

J.B. was provided with intensive ABA interventions throughout his early years. J.B.'s parents were both trained in dealing with behavior which benefited J.B. immensely. When J.B. was young, he had very typical autistic like behaviors (i.e. aggression, elopement, delayed language, fine and oral motor delays, social delays, hitting, kicking etc.) With intense interventions J.B. made great process. When J.B. entered public education, he had very few maladaptive behaviors and in many ways appeared to be a typical boy.

J.B. started public education mainstreamed the majority of the time. This continued for several years. However, as J.B. spent more time in public school he received less evidence-based behavior interventions implemented in a structured and well-planned manner. Over time, J.B.'s rigidity resurfaced because of the lack of autism specific behavior interventions and a systemic lack of understanding regarding high functioning autism.

On April 24, 2018, J.B. had to be physically restrained. While in the general education setting, J.B. became nonverbal with staff. He was offered the option of going to the resource room or staying in the general education setting. J.B. chose to go to the resource room. Once arriving in the resource classroom, J.B. chose to work on the computer. The resource teacher had all other students leave. The resource teacher took J.B.'s essential oil that he used as a coping tool and refused to return it. J.B., in an effort to get his oil back, became non-compliant and eventually escalated to hitting and kicking staff.[1] J.B. was physically restrained and later released when it appeared, he had calmed down. It is unclear how long he was restrained.

On April 30, 2018, the District convened an IEP meeting. The District offered J.B. a one to one aide. However, without an appropriate behavior assessment, BCBA supervision, aide training, and a well-defined data collection system, a one to one aide served little purpose.

On September 19, 2018, J.B. was restrained at school by the resource teacher and aide. J.B. escalated in the morning and engaged in property destruction. J.B.'s resource teacher

---

[1] J.B. had been taught he can access items like his oil if he escalates.

employed the restraint and was so disturbed by the process she became physically ill, and per her account, was vomiting for thirty minutes in the restroom while J.B.'s mom de-escalated and helped support J.B. cleaning up the classroom. The resource teacher shared with J.B.'s parent that it was her first restraint. The District decided that instead of being in the general education setting as stated in his IEP, J.B. would spend the next several days in the resource setting so he could build rapport with staff. J.B.'s resource teacher was not at school for several weeks following this incident.

On October 11, 2018, the District convened an IEP meeting. At the meeting, the District reported that J.B.'s reinforcement system was not in place and they wanted to wait until his resource teacher returned. This was odd because J.B.'s IEP had called for a reinforcement system for a longtime. No changes were made to J.B.'s IEP nor did the District offer to conduct a behavior assessment.

On October 17, 2018, J.B. was again physically restrained. However, this time his arm was sprained. J.B. presented with scratches on his back, hands, and a large bruise on his thigh. J.B. escalated after the resource teacher grabbed a preferred book from him. Per J.B.'s poorly written behavior plan, this book was a preferred activity he was supposed to engage in when he became escalated. By grabbing the book out of his hands, J.B. was triggered causing an escalation in his behavior. This should have never happened in this manner and was contrary to his behavior support plan.

J.B. was awake most of the night complaining of the pain in his arm and complained of pain on the bridge of his nose for weeks after the restraint, saying "my nose hurts from when the teachers held me down."

On October 18, 2018, J.B. was taken to the emergency room. The emergency room physician gave a note to excuse J.B. from school for two days. After J.B.'s parents sent the excuse note from the emergency room to the IEP team, it was communicated to J.B.'s parents by the principal over the phone that his resource teacher also filed a criminal complaint of "assault" against J.B.—who was ten years old at the time.

On October 19, 2018, J.B. consulted with his neurologist. The neurologist noted that J.B. was traumatized by the restraint, could not sleep, and had significant pain in his arm. The neurologist opined that J.B. should not return back to school.

On October 22, 2018, J.B. began seeing psychologist, Dr. Kristen Campos, to begin working through the trauma he experienced as a result of his treatment at school. J.B. has attended weekly sessions to address the trauma and his fear of teachers.

District's Response to Plaintiff's Allegations:

Although J.B. is a student who qualifies for special education and related services, the District disputes Plaintiff's contention that J.B. was not properly assessed, not provided with appropriate goals and objectives, or that the District knowingly or intentionally failed to provide J.B. with special education and related services designed to address his specific needs.

J.B.'s parents were at all times actively and intimately involved in J.B.'s education, including the development of appropriate goals, objectives and plans to address J.B.'s behaviors.

District staff were at all times appropriately trained and responded to J.B.'s behaviors in an appropriate manner, utilizing the minimum force necessary to restrain J.B. from harming himself and others with his behaviors.

The harm J.B. suffered was due to his repeatedly striking walls and windows, and brandishing tree branches at District staff, rather than as a result of the restraint.

The restraint complained of was accomplished in accordance with accepted restraint procedures, and with the minimum restraint necessary under the circumstances.

J.B.'s parents, in response to the criminal complaint filed against J.B., filed a criminal complaint against the teacher who had restrained J.B., which complaint was found to be without merit.

///

///

///

///

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE

## THE SETTLEMENT AGREEMENT

The Settlement Agreement resolved fully, finally, and forever any and all known and unknown claims, rights, demands, or causes of action between J.B. and the District that were raised or could have been raised.

**Settlement Terms:**

1. The settlement was contingent on two things: 1) approval by the District's governing board; and 2) approval by this Court of a minor's compromise. The District's governing board has already approved the settlement.

2. Subject to those contingencies the District will pay the sum of $275,000 into the Shaw Firm's client trust within thirty days of approval of the minor's compromise.

3. The Shaw Firm will use a portion of the funds to pay an estate planning attorney to setup a special needs trust, file that trust with the appropriate state court, and pay any outstanding liens for services rendered to J.B. as a result of the incidents described herein. Once the trust is established, the Shaw Firm will deposit the remaining funds into the account as discussed herein.

4. Attorney Fees and Costs. Plaintiff J.B. and his parent retained the Shaw Firm to represent them in this action. The attorneys have agreed to reduce their fees from the percentages provided for in the retainer significantly. As a result, the District has agreed to pay the Shaw Firm $35,000 for attorneys' fees and costs.

5. Net Recoveries to Minor. The minor J.B. will receive a net recovery of $275,000.

**Special Needs Trust:**

1. The proposed settlement provides for immediate cash payments to J.B. through a Special Needs trust under 42 U.S.C. § 1396p(d)(4)(A) and California Probate Code § 3600, et seq.

2. Pursuant to Probate Code 3604(b), a Special Needs Trust may be established if the court determines all of the following:

    a) That the minor or person with a disability has a disability that substantially impairs

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE

the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap;

b) That the minor or person with a disability is likely to have special needs that will not be met without the trust; and

c) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor persons with a disability.

3. Pursuant to Probate Code Section 3604(b)(1), J.B. has a disability of autism and other comorbid mental health that will substantially impair his ability to provide for his own care, custody, and constitutes a substantial handicap. The severity of J.B.'s disability is such that he will not be able to live independently without reliance on a plethora of personal assistance services. It is anticipated that J.B.'s disability will require ongoing support and assistance.

4. Pursuant to Probate Code Section 3604(b)(2), J.B. is likely to have special needs that will not be met without the special needs trust. Without the trust, J.B. will be ineligible for public assistance programs either now or after he reaches the age of eighteen. These benefits are sure to be vital to J.B.'s continued support, safety, and personal well-being. Such essential needs as personal care assistance, independent living services, medical services, and other palliative care will not be met or available without the protection offered by a special needs trust.

5. Pursuant to Probate Code Section 3604(b)(3), the money to be paid to the trust does not exceed the amount that appears to be reasonably necessary to meet the special needs of J.B.

6. While this Court is not bound by the California Rules of Court, the proposed Special Needs Trust will also fully comply with California Rule of Court, Rule 7.903. Indicated below are the various sections of the proposed trust that will comply with Subsection (c) of Rule 7.903, which states: Except as provided in (d), unless the court

JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE

otherwise orders for good cause shown, trust instruments for trusts funded by court order must:

    a) Not contain "no-contest" provisions;

    b) Prohibit modification or revocation without court approval;

    c) Clearly identify the trustee and any other person with authority to direct the trustee to make disbursements;

    d) Prohibit investments by the trustee other than those permitted under Probate Code section 2574;

    e) Require the trustee to file accounts and reports for court approval in the manner and frequency required by Probate Code sections 1060 et seq. and 2320 et seq.;

    f) Require court approval of changes in trustees and a court order appointing any successor trustee;

    g) Require compensation of the trustee or the attorney for the trustee, to be in just and reasonable amounts that must be fixed and allowed by the court. The instrument may provide for periodic payments of compensation on account, subject to the requirements of Probate Code section 2643 and California Rule of Court 7.755.

**The Proposed Settlement is Fair to the Minor Plaintiff**

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir.2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id.* (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir.1978)).

When considering a proposed settlement in suits involving minor plaintiffs, the district court is required to "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Id.*, (quoting *Dacanay*). In *Robidoux*, the Ninth Circuit held that district courts should "limit the scope of their review to the question whether the net amount distributed to

each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Id*. at 1181–82. Further, the fairness of each minor plaintiff's net recovery should be evaluated "without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel— whose interests the district court has no special duty to safeguard." *Id*. at 1182 (citing *Dacanay*, 573 F.2d at 1078).

The net recovery in this case is in line with or higher that other cases with similar facts. See, e.g., *Warchol v. Kings Cty. Office of Educ.*, No. 1:17-cv-00106-DAD-MJS, 2018 WL 1185053 (E.D. Cal. Mar. 7, 2018) (approving net recovery of $56,488.32, where plaintiff diagnosed with autism alleged ongoing verbal and physical abuse by teacher); *Brooks v. Fresno Unified Sch. Dist.*, No. 1:15-cv-00673- WBS-BAM, 2015 WL 9304862 (E.D. Cal. Dec. 22, 2015) (approving net settlement payment of $300,000 after a psychologist diagnosed plaintiff as suffering from post-traumatic stress disorder as a result of the conduct alleged and estimated that two to five years of therapy was necessary to recover from psychological trauma); *D.C. ex rel. T.C. v. Oakdale Joint Unified Sch. Dist.*, No. 1:11-cv-01112-SAB, 2013 WL 275271 (E.D. Cal. Jan. 23, 2013) (approving net settlement payment of $30,000 based on allegations that the school improperly used restraints and other punishments on minor, resulting in a sprained ankle in one instance); *T.B. v. Chico Unified Sch. Dist.*, No. 2:07-cv-00926-GEB-CMK, 2010 WL 1032669 (E.D. Cal. Mar. 19, 2010) (approving net settlement payment of $16,500 based on allegations that the minor was subject to unnecessary force at school)

The net recovery in this case is higher than settlements approved in the Eastern District of California. In *D.K. v. Solano County Office of Education*, USDC Eastern District, Case No. 2:2008-cv-00534, (E.D. Cal. Dec. 20, 2011), the court approved payments of $200,000 plus $50,000 in attorneys' fees. In that case, it was alleged that a teacher and classroom aide forced a student to walk on his broken foot, tied the student to his wheelchair, and forced him to sit in his feces. It was also alleged that the teacher forced another student to stand on a chair for long periods of time as punishment for falling asleep in class.

The net recoveries to J.B. will be very substantial. The amounts allocated to the special

1 needs trust will be sufficient to cover the costs of care for J.B., and to provide monetary
2 compensation the compensatory services he requires as a result of the incidents described herein.
3 The terms of this Agreement allow J.B.'s parents to use funds from the trust for the purposes of
4 providing the compensatory services he requires. Plaintiff's counsel believes that the settlement is
5 fair and reasonable. The Defendants dispute causation of J.B.'s injuries and damages, and dispute
6 liability therefor.

7     In accordance and based on the forgoing, the parties respectfully request that the Court
8 approve the proposed Settlement Agreement and the distribution of settlement funds as described
9 herein.

DATED: July 16, 2019            SHAW FIRM

                                By:      /s/
                                    DANIEL R. SHAW
                                    Attorneys for Plaintiffs

DATED: July 16, 2019            HALL, HIEATT & CONNELY, LLP

                                By:      /s/
                                    Molly E. Thurmond
                                    Attorneys for Defendants

DATED: July 16, 2019            FAGEN FRIEDMAN & FULFROST, LLP

                                By:      /s/
                                    Jan E. Tomsky
                                    Attorneys for Defendant

-10-
JOINT PETITION FOR APPROVAL OF MINOR'S COMPROMISE